IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH WILSON, | ) | CASE NO. 5:16 CV 2690 |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| JOHN COLEMAN, Warden, | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner Keith Wilson, a prisoner in state custody, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Wilson*, Case Nos. 15CR015 / 15CR048. (R. 1.) Respondent Warden John Coleman[1] has filed a return of writ. (R. 13.) Wilson has filed a Reply to the return of writ. (R. 16.) This matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Wilson's petition or other case-dispositive motions. For the reasons stated below, the court recommends Wilson's petition be denied.

## FACTUAL BACKGROUND

Ohio's Fifth District Court of Appeals set forth the following facts underlying Wilson's convictions:

[1] John Coleman is the warden of the Toledo Correctional Institution in Toledo, Ohio, where Wilson is incarcerated. (R. 13 at 1.)

{¶ 2} Richard Tyler owns the Iron Pony Saloon and Route 3 Drive Thru in Holmes County, Ohio. His apartment is above and behind the business. In order to enter his apartment, one must utilize a door on the back corner of the building, near the public entrance to the bar and restaurant. A stairwell from an outside door leads to the entrance of the apartment, as well as the kitchen of the bar. Tyler testified he keeps $30,000 worth of change for waitresses and bartenders in his office of the apartment.

{¶ 3} Tyler testified he first met Lidia Briley at Walmart in Ontario, Ohio in the fall of 2014. Briley then visited Tyler's apartment with a friend in December of 2014. Briley contacted Tyler via text message again later in December, 2014.

{¶ 4} Before Christmas of 2014, Briley and Tyler had dinner together and went back to Tyler's home. Tyler then drove Briley back to her home.

{¶ 5} On January 4, 2015, Tyler picked up Briley and brought her back to his apartment. She told him she had been kicked out of her living situation due to a fight with her roommate. Tyler and Briley later engaged in sexual intercourse.

{¶ 6} The next morning, Tyler came back into his apartment after checking on his business activities and observed Briley with her cell phone in her hand. Tyler noticed Briley's demeanor had changed and she would no longer acknowledge him. Tyler discovered Briley had emptied his wallet. When he approached her, Briley started running for the door. Tyler testified his wallet was in the nightstand in the bedroom and had contained just under $10,000.00.

{¶ 7} Tyler blocked the door to the apartment by planting his foot in front of the door in order to prevent Briley from leaving. Briley then screamed for help. Tyler locked the door, and Briley pulled a gun and pointed it at his face. Tyler testified he had placed his gun on the kitchen counter the night before. Briley then threatened to shoot Tyler in the face with the gun. Tyler reached behind him, unlocked the door to the apartment, opened the door, to allow Briley to leave the apartment.

{¶ 8} Tyler testified when he swung the door open, Briley looked away and he slid the slide back on the pistol so the gun could not fire. He then took the gun from her, and followed her around the corner outside of the apartment. He then had the gun in his hand.

{¶ 9} At the time Tyler rounded the corner into the hallway of his residence, he was hit by two people. One person swung at his face and another tried to choke him from behind around his throat. Tyler was at the top of the stairs when the altercation caused the group to stumble down to the bottom of the stairwell.

> {¶ 10} Briley then darted back into the apartment. Appellant ran up the stairs and into the apartment. One of the other individuals ran out the outside door. Tyler then called the police, while keeping the gun pointed up the stairs at the apartment. Tyler remained on the phone with the police department for a period of time. Eventually, he ran back upstairs to the apartment when he discovered Briley and Appellant had escaped out of a bedroom window.
>
> {¶ 11} Tyler observed his office was trashed, files were on the floor, money was on the floor, equipment was pulled out away from the walls and money was missing. Tyler then found some money outside of his residence on the ground.
>
> {¶ 12} An employee of Tyler's witnessed the individuals leaving in a white van, and wrote down the license plate number of the vehicle in the snow. Briley, Appellant and a co-defendant were later apprehended by the Ohio State Highway Patrol on U.S. Route 30 near the Ashland and Wayne County border.

*State v. Wilson*, No. 15CA015, 2015 WL 9693886, at *1-2 (Ohio Ct. App. Dec. 31, 2015).

These facts "shall be presumed to be correct," and Wilson has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998).

## PROCEDURAL BACKGROUND

### A. Trial Court

On February 9, 2015, the Holmes County Grand Jury indicted Wilson in Case No. 15CR015 on the following charges: aggravated robbery in violation of O.R.C. § 2911.01(A)(1), (C) (Count One); aggravated burglary in violation of O.R.C. § 2911.11(A)(1), (B) (Count Two); aggravated burglary in violation of O.R.C. § 2911.11(A)(2), (B) (Count Three); and grand theft in violation of O.R.C. § 2913.02(A)(1), (B)(2) (Count Five).[2] (R. 13-1, Ex. 1.) The aggravated

[2] Co-defendants Lidia Briley and Roy Larry were charged in the same indictment under separate case numbers. (R. 13-1, Ex. 1.) All three co-defendants were charged in each count, except Count Four, which charged only Briley. (R. 13-1, Ex. 1 at 7.)

burglary charges in Counts One through Three each included a three-year firearm specification. (*Id*.) Wilson entered pleas of not guilty to all charges. (R. 13-1, Ex. 2.)

On May 18, 2015, Wilson was indicted in a second case, Case No. 15CR048, arising from the same incident. (R. 13-1, Ex. 30.) This indictment included a fifth charge against Wilson for burglary in violation of O.R.C. § 2911.12(A)(1), (D). (R. 13-1, Ex. 3.)[3] Wilson entered pleas of not guilty to all charges in that case as well. (R. 13-1, Ex. 4.) On May 29, 2015, at the State's request, the trial court joined the two cases. (R. 13-1, Exs. 5, 30.) Upon joinder, the grand theft charge became Count Four and the burglary charge, Count Five. (R. 13-1. Ex. 6.)

On June 1, 2015, the case proceeded to a jury trial. (*Id*.) The jury returned its verdict on June 3, 2015, finding Wilson guilty of all charges and specifications. (*Id*.)

On June 18, 2015, Wilson, acting *pro se*, filed a motion for a new trial. (R. 13-1, Ex. 7.) He alleged, among other things, that the victim spoke to a juror while the judge and counsel were engaged in a bench conference and that the prosecution coached a witness during the witness's testimony. (*Id*.) The State moved to strike the motion. (R. 13-1, Ex. 9.) The court conducted a hearing on the matter and denied the motion. (R. 13-1, Exs. 10, 30.)

On June 25, 2015, the trial court held a sentencing hearing. (R. 13-1, Ex. 11.) It sentenced Wilson to eight years' imprisonment for each count, except for the grand theft charge, for which it sentenced him twelve months, with all sentences to run concurrently. (*Id*.) The trial court also imposed three-year prison sentences for each gun specification, which were to run concurrently

[3] The indictment in Case No. 15CV048 was not included in the appendix to Respondent's return of writ, but Respondent did include in the appendix as Exhibit 3 a bill of particulars regarding the new burglary charge. (R. 13-1, Ex. 3.)

with each other but consecutively with the other counts, for an aggregate sentence of eleven years in prison. (*Id*.)

On July 13, 2015, the trial court issued a *nunc pro tunc* judgment entry of sentencing to correct an error in the original sentencing judgment entry, which imposed sentences on two counts of aggravated robbery and one count of aggravated burglary rather than the correct two counts of aggravated burglary and one count of aggravated robbery. (R. 13-1, Ex. 12.)

**B. Direct Appeal**

Wilson, through new counsel, filed a timely notice of appeal to the Fifth District Court of Appeals. (R. 13-1, Ex. 13.) In his appellate brief, he raised the following assignments of error:

1. There was insufficient evidence to convict Keith Wilson on all five counts in the indictment and three gun specifications.

2. The trial court committed plain error by failing to merge the counts at sentencing, in violation of the right against double jeopardy and Ohio Revised Code [§] 2941.25, because the crimes were allied offenses of similar import. The concurrent sentences were thus contrary to law under R.C. [§] 2953.08(A)(4).

3. Some or all of Keith Wilson's convictions were against the manifest weight of the evidence.

4. The trial court abused its discretion and committed plain error to admit the evidence of telephone company records without an authenticating witness, and the records without an authenticating witness, and the records were improperly read into evidence by the prosecuting attorney.

5. It was structural error or plain error to continue the trial when the victim was seen talking to a juror during a sidebar conference, in violation of Keith Wilson's constitutional right to a fair trial.

6. The trial court erred by overruling Keith Wilson's motion for mistrial. Otherwise, Keith Wilson's Sixth Amendment right to counsel and his right to a fair adjudication and to an appeal are compromised by a faulty trial transcript.

7. Keith Wilson suffered ineffective assistance of counsel.

8. The court committed plain errors in sentencing, contrary to law.

(R. 13-1, Ex. 14 (capitalization altered).) The State filed a brief in response. (R. 13-1, Ex. 15.)

On December 31, 2015, the Ohio appellate court affirmed the trial court's judgment in part and reversed it in part. (R. 13-1, Ex. 16.) It held that Wilson's conviction for aggravated burglary with a firearm specification, as charged in Count Three, was based on insufficient evidence and should be dismissed. (R. 13-1, Ex. 16 at 157.)

On April 20, 2016, Wilson, acting *pro se*, filed a notice of appeal of the appellate court's judgment and motion for delayed appeal in the Ohio Supreme Court. (R. 13-1, Exs. 17, 18.) On June 15, 2016, the Ohio Supreme Court summarily denied Wilson's motion and dismissed the case. (R. 13-1, Ex. 19.)

**C. Application to Reopen Direct Appeal**

Meanwhile, on March 30, 2016, Wilson, again acting *pro se*, filed in the state appellate court a timely application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (R. 13-1, Ex. 21.) In his application, Wilson asserted that he was denied the effective assistance of appellate counsel for failing to raise on direct appeal the following assignments of error:

1. Unconstitutional amendment to the indictment[.]

2. Prosecutorial misconduct[.]

3. Corhersed [*sic*][.]

4. Impeachment evidence[.]

(R. 13-1, Ex. 22 (capitalization altered).)

That same day, an attorney claiming to be appointed counsel for Wilson filed a separate application for reopening. (R. 13-1, Ex. 25.) This application asserted that Wilson was denied the effective assistance of appellate counsel for failing to raise on direct appeal the following assignments of error:

> The trial court erred by allowing the prosecutor and a witness to read certain inculpatory text messages into the record, when such testimony eviscerated Mr. Wilson's right to have accomplice testimony viewed with grave suspicion.

(R. 13-1, Ex. 25.)

The State opposed the *pro se* application. (R. 13-1, Ex. 23.) On July 5, 2016, the state appellate court denied the *pro se* application as meritless. (R. 13-1, Ex. 24.) On October 20, 2016, the appellate court denied the second application as not permitted under appellate court rules. (R. 13-1, Ex. 26.)

On November 16, 2016, Wilson filed a *pro se* notice of appeal of the appellate court's October 2016 judgment in the Ohio Supreme Court, asserting:

> The trial court erred by allowing the prosecutor and a witness to read certain inculpatory text messages into the record, when such testimony eviscerated Mr. Wilson's right to have accomplice testimony viewed with grave suspicion.

(R. 13-1, Ex. 27.) The Ohio Supreme Court declined jurisdiction over the appeal on January 25, 2017. (R. 13-1, Ex. 28.)

## FEDERAL HABEAS CORPUS

Wilson's *pro se* petition for writ of habeas corpus asserts the following grounds for relief:

1. Some or all of Keith Wilson's convictions were against the manifest weight of the evidence.

2. The trial court abused its discretion and committed plain error to admit the evidence of telephone company records without an authenticating witness,

and the records without an authenticating witness, and the records were improperly read into evidence by the prosecuting attorney.

3. It was structual [*sic*] error or plain error to continue the trial when the victum [*sic*] was seen talking to a juror during a sidebar conference, in violation of Keith Wilson's constitutional right to a fair trial.

4. The trial court erred by overruling Keith Wilson's motion for mistrial. Otherwise, Keith Wilson's Sixth Amendment right to counsel and his right to a fair adjudication and to an appeal are compromised by a faulty trial transcript.

5. There was insufficient evidence to convict Keith Wilson on all five counts in the indictment and three gun specifications.

6. The trial court committed plain error by failing to merge the counts at sentencing, in violation of the right against double jeopardy and Ohio Revised Code [§] 2941.25, because the crimes were allied offenses of similar import. The concurrent sentences were thus contrary to law under R.C. [§] 2953.08(A)(4).

7. Keith Wilson suffered ineffective assistance of counsel.

8. The court committed plain errors in sentencing, contrary to law.

(R. 1 at 5, 7, 8, 10, 16; R. 1-1 (capitalization altered)).

Respondent filed a return of writ and Wilson filed a Reply to the return of writ. (R. 13, 16.) Wilson also filed motions to impound the record (R. 17) and to "construe all arguments" (R. 18), both of which this court denied (R. 19).

## STANDARDS OF REVIEW

### A. AEDPA Review

Wilson's petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as it was filed after the Act's 1996 effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums

for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the

result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. A petitioner, therefore, "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

**B. Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Procedural default is a related but distinct concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the

state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner also may procedurally default a claim by failing to raise the claim in state court, and pursue the claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806.

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a

"fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

**C. Cognizability**

To the extent that claims asserted in federal habeas petitions allege state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious

that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal citations omitted). The Supreme Court, therefore, "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id*. at 352.

## ANALYSIS

Respondent argues that Wilson's grounds for relief are procedurally defaulted because he did not fairly present them to the Ohio Supreme Court on direct review. (R. 13 at 10-14.) The court agrees.

As explained above, to exhaust claims in state courts and preserve them for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Wilson raised virtually identical claims in the state court of appeals as he does here. (R. 13-1, Ex. 14.) But he did not file a timely appeal, to the Ohio Supreme Court, from the state appellate court's judgment denying those claims; and the Ohio high court denied his motion for a delayed appeal. (R. 13-1, Exs. 17-19.) The Ohio Supreme Court's summary denial of a motion for delayed appeal is presumed to be a procedural ruling sufficient to bar federal habeas review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam).[4]

[4] Wilson appears to disagree with the Sixth Circuit's holding in *Bonilla*, arguing that because a

Moreover, because these claims arise out of the record of proceedings in the trial court, Ohio's *res judicata* doctrine now prohibits Wilson from raising the claims in any state post-conviction proceeding. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). And with no state-court remedies still available to him, Wilson has procedurally defaulted these claims. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

Wilson does not offer an excuse for the claims' default. However, as Respondent points out, Wilson did argue in his motion for delayed appeal in the Ohio Supreme Court that his appellate counsel did not provide him with the court of appeals' decision until twenty days after it was issued, leaving him insufficient time to comply with the high court's forty-five-day deadline for filing a notice of appeal. (R. 13-1, Ex. 18 at 170.) He filed the notice of appeal and

---

motion for delayed appeal is permitted under the Ohio Supreme Court practice rules, a summary denial of such a motion should not be presumed to be a procedural ruling that bars federal habeas review. (R. 16 at 11-12.) This court, however, is bound by the precedent of the Sixth Circuit and Wilson's argument is misplaced.

motion for delayed appeal with the Ohio Supreme Court approximately three months after he claims he received the appellate court decision from counsel. (R. 13-1, Ex. 17, 18.) Wilson complained that a "staffing issue" also contributed to his untimely filing of the notice of appeal. (R. 13-1, Ex. 18 at 170.) These factors, however, are not sufficient to provide cause for Wilson's procedural default of the claims.

"Attorney error that constitutes ineffective assistance of counsel is cause" to excuse the procedural default of a habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). But claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective-assistance claim itself is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Although "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Id*. (emphasis original). Wilson did not raise a claim in either of his motions for reopening under Ohio Appellate Rule 26(B) that his appellate counsel was ineffective for failing to provide timely notice of the outcome of his appeal. (R. 13-1, Exs. 22, 25.) And as the state appellate court noted in rejecting Wilson's second motion for reopening, Rule 26(B) does not permit filing multiple motions for reopening. (R. 13-1, Ex. 26.) *See also State v. Williams*, 99 Ohio St. 3d 179, 181 (Ohio 2003) ("[T]here is no right to file successive applications for reopening . . . ."). Wilson does not provide a cause for this claim's procedural default either. Wilson's claim of appellate counsel ineffective-assistance based on a failure to provide him with the appellate court decision in a timely manner, therefore, is procedurally defaulted and cannot serve as cause for the default of the claims presented here.

Moreover, even if Wilson had preserved this claim of ineffective assistance of appellate counsel, it would not excuse the default of his habeas claims. In *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426 (6th Cir. 2006), the Sixth Circuit held that "[b]ecause a defendant is entitled to effective assistance of counsel on direct appeal, such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings[]," including informing her client of the outcome of the appeal. *Id.* at 433 (quoting *White v. Schotten*, 201 F.3d 743, 752-53 (6th Cir. 2000)). To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show both that his counsel's performance was deficient, and that his counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court in *Smith* found that the petitioner's appellate counsel's failure to inform him of the appellate court's decision until three days before the deadline for filing an appeal of that decision constituted constitutionally deficient performance. *Smith*, 463 F.3d at 434-35. But it found no prejudice because the petitioner did not take action to appeal the decision until approximately five months after learning of the decision, well beyond the Ohio Supreme Court's forty-five-day appeal deadline. *Id*. at 435-36.

Here, Wilson's appellate counsel provided him with the appellate court's decision twenty days after it was issued, leaving Wilson twenty-five days to prepare a notice of appeal to the Ohio Supreme Court—significantly more time than the three days remaining for the petitioner in *Smith*. But even assuming that constituted deficient performance, Wilson could not prove prejudice because, as in *Smith*, he did not file a notice of appeal until several months later. Wilson's underlying Motion for Delayed Appeal alleged that an unspecified "staffing issue" impeded his filing a timely notice of appeal. (R. 13-1, Ex. 18). It is not apparent what Wilson

was referring to, but just as there is no right to counsel beyond the first appeal of right, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), there is no constitutional right to the effective assistance of prison personnel. The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 (1977). Nevertheless, the *Bounds* decision "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Furthermore, the Sixth Circuit repeatedly has rejected petitioner's attempts to fault their ignorance of the law or prison resources for failing to comply with procedural requirements for filing court pleadings. *See, e.g., Bonilla,* 370 F.3d at 498 (finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default).

Wilson, therefore, has procedurally defaulted each of the claims he asserts here and has failed to demonstrate cause and prejudice to excuse that default. He contends, however, that the court should excuse his default under the "fundamental miscarriage of justice," or "actual innocence," exception to the cause and prejudice requirement. (R. 16 at 11.) The Supreme Court has held that this "narrow exception" applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id*. (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The claim requires a showing of "new reliable evidence"

and factual innocence, not mere legal insufficiency. *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Wilson states: "A [f]undamental misscarriage [*sic*] of [j]ustice did occur in Petitioner, Mr. Wilson's case and extraordinary [c]onstitutional violation's [*sic*] did result in Mr. Wilson, being innocent of the procedural default standard's [*sic*] in Mr. Wilson's habeas corpus petition." (R. 16 at 11.) But he presents no new evidence to show he is "actually innocent" of the crimes for which he was convicted. Wilson seeks to rebut several factual assertions made in Respondent's return of writ, but he identified no new evidence—that was not before the trier-of-fact—and refers only to evidence in the record to support his arguments. (*Id.* at 6-7.)

This court, therefore, finds that each of Wilson's claims are procedurally defaulted and recommends that they be dismissed on that basis.[5]

[5] In addition, as Respondent further argues (R. 13 at 14-17), several of these claims generally are not cognizable on federal habeas review, including: Ground One, regarding the manifest weight of the evidence, *see, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilty beyond a reasonable doubt); Ground Two, challenging the trial court's evidentiary rulings, *see, e.g., Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review"); and Ground Eight, relating to sentencing, *see, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus).

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that Petitioner Keith Wilson's petition for writ of habeas corpus (R. 1) be denied in its entirety, because the claims raised are procedurally defaulted and/or not cognizable on federal habeas review.

Date: October 16, 2018

*s/ David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).